**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

SCOTT EDWARD WHITNEY,
        *Defendant-Appellant.*

No. 10-10118

D.C. No.
2:09-cr-00149-
FCD-2

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued and Submitted
October 11, 2011—San Francisco, California

Filed March 7, 2012

Before: Betty B. Fletcher, Stephen Reinhardt, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Tim Warriner, Sacramento, California, for the appellant.

Samantha S. Spangler (argued), Assistant United States Attorney, Benjamin B. Wagner, United States Attorney, Sacramento, California, for the appellee.

## OPINION

REINHARDT, Circuit Judge:

Scott Edward Whitney appeals his 87-month sentence on a guilty plea to a one-count indictment under 18 U.S.C. § 286. He contends that the U.S. Attorney breached the parties' plea agreement by disclosing admissions made by Whitney while cooperating with the government, and by urging imposition of a sentence above the low end of the Sentencing Guidelines. He also contends that the district court erred by improperly imposing a two-level leadership enhancement. We hold that the breach of the plea agreement by the U.S. Attorney resulted in plain error that affected Whitney's substantial rights. We additionally hold that the district court committed clear error when it imposed a two-level role enhancement for Whitney's alleged role as a leader or organizer pursuant to U.S.S.G. § 3B1.1(c). Accordingly, we vacate Whitney's sentence and remand for resentencing before a different judge.[1]

---

[1]The judge who presided over the sentencing is now retired. We would, however, be required to reassign the case in any event. *United States v. Camper*, 66 F.3d 229, 233 (9th Cir. 1995) (holding that under *Santobello v. New York*, 404 U.S. 257 (1971), resentencing after a remand for specific performance of a plea bargain must be performed by a different judge).

## BACKGROUND

Scott Edward Whitney entered into a plea agreement with the government in which he agreed to plead guilty to one count of conspiracy to defraud the government by filing false claims, 28 U.S.C. § 286. This charge was based on Whitney's role in a scheme to file false tax returns using inmate identities and personal information while he was incarcerated in Herlong Federal Correctional Institution ("Herlong") for a similar offense. In exchange for Whitney's guilty plea, his promise of full cooperation with the government, and a limited waiver of his right to appeal, Whitney received from the government a number of promises related to sentencing. Among those relevant to this appeal are the government's representations that it would recommend to the court that Whitney be sentenced to the low end of the applicable guideline range for his offense, and that in its effort to establish the applicable sentencing guideline range it would not use any incriminating information divulged by Whitney during the course of his cooperation.[2] The plea agreement included a number of stipulations regarding the calculation of Whitney's sentence, including his base offense level, but contained no stipulation related to his role in the offense. To the contrary, the plea agreement explicitly reserved to both the defendant and the government the right to argue their respective positions as to whether Whitney should receive a two-level enhancement for his role in the offense.[3] The agreement also precluded either party from arguing in support of any departure from the Sentencing Guidelines.

---

[2]Prior to entering into the plea agreement, the government also stipulated in an informal immunity agreement with Whitney that the information he provided during the course of his cooperation would not be used against him for sentencing purposes.

[3]The specific language from the plea agreement stated that the "government may argue that a two-level enhancement is appropriate; defendant may argue it does not apply."

The presentence report identified three participants: Whitney, Paucar, who was another Herlong inmate who recruited Whitney to participate in this scheme, and Alexander, also a Herlong inmate, who was connected to the scheme through Paucar. It also reported that the investigating IRS agents were unable to discover whether the inmates identities and personal information used to complete the tax returns were obtained fraudulently or were supplied voluntarily by the inmates named on the returns. According to the report, at Paucar's request Whitney supplied him with tax forms and information on filing false returns. Whitney admitted to filing his own false return as well as false returns using other inmates' identities.

The presentence report concluded that Whitney should receive a two-level upward role adjustment pursuant to U.S.S.G. § 3B1.1, based on his role managing the completion of the fraudulent tax forms. The probation officer determined that based on Whitney's criminal history category and offense level, including the two-level role enhancement, the corresponding sentencing guideline range was 41 to 51 months. The probation officer nonetheless suggested an upward departure to 87 months to reflect the seriousness of the offense and Whitney's lengthy criminal history.

At Whitney's sentencing, the judge took note of the presentence report and commented on Whitney's "impressive" criminal history. The judge heard first from Whitney's attorney, Dorfman, who pointed out that the plea agreement permitted him to argue that Whitney should not receive a role enhancement. Dorfman did not contest the findings included in the presentence report, but asserted that its conclusion was incorrect and contended that the enhancement was not appropriate because Whitney was not a leader or organizer but rather was recruited by Paucar, as described in the report. Dorfman challenged the upward departure urged in the presentence report claiming that Whitney "doesn't harm society physically. He

may harm society by being a thief, but he's not a good thief. . . . This is not a violent person."

When the Assistant U.S. Attorney ("AUSA") addressed the court, she stated that the government was "recommending the low end of the guidelines as we have obligated ourselves to do." She then urged the imposition of the role enhancement, contending that while "Mr. Whitney is not the brain power behind this particular scheme . . . he did take a leadership role." She went on to say:

> I have to tell you this puts me between a rock and a hard spot. On the one hand when I sat down with Mr. Whitney I agreed not to use any of his information supplied to us during his debriefing against him for sentencing purposes. On the other hand, he's now trying to pull something that I can't let him get away with. I have to be honest. He's supplied information to me during his debriefing session that put himself in a supervisory role, a two-level increase. I can't just ignore that and say: No it did not happen, to be honest with the court. Whether he's a thief but not a good one, I think it's important for the court to realize that one of his supervised release violations provides that essentially he was using the information from the underlying case to try to re-victimize the victims. He was using fraudulently obtained information to try to re-victimize the victims in the case. So I think that rebuts the claim that he's not a good thief.

The court responded, calling Whitney an "incorrigible narcissistic thief" and predicted that he would inevitably re-offend by again stealing identities. The court determined that Whitney should receive the two-level role enhancement, citing his "complicit[y]" in the fraud, and recognizing that although "no one says [Whitney] is the ring leader as such[, he is] the guy that facilitated the crime." With this two-level

enhancement, Whitney's adjusted offense level was fifteen. Combined with his criminal history category of six, the corresponding guideline sentence was 41 to 51 months. The court departed upward from the guidelines to impose a sentence of 87 months, citing the "protection of the public and deterrence" as the primary bases for its departure. Whitney appealed his sentence.

## DISCUSSION

### I.

A defendant's claim that the government breached its plea agreement is generally reviewed de novo. *See United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000). In this case however, Whitney's counsel failed to object to the prosecutor's statements at sentencing. When a defendant forfeits his claim by failing to make a timely objection, we must review that claim for plain error. *United States v. Cannel*, 517, F.3d 1172, 1175-77 (9th Cir. 2008); *see also Puckett v. United States*, 129 S.Ct. 1423, 1428 (2009) (holding that a procedurally forfeited error is subject to plain error review). "Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Cannel*, 517 F.3d at 1176.

### A.    Clear Breach

**[1]** The Supreme Court has recognized that the government's breach of the parties' plea agreement is "undoubtedly a violation of the defendant's rights." *Puckett*, 129 S.Ct. at 1429. In this case, the U.S. Attorney breached the plea agreement in two respects. First, the AUSA stated that she had "agreed not to use any of [Whitney's] information supplied . . . during his debriefing against him for sentencing purposes," but went on to tell the court that Whitney "supplied information to [her] during his debriefing session that put

him[ ] in a supervisory role." Not only was this statement in clear breach of the plea agreement, but the government admitted that it was violating the agreement in the course of the very same statement.[4]

[2] Second, the government breached its agreement by implicitly arguing for a sentence greater than the terms of the plea agreement specified that the prosecution would recommend: the low end of the applicable guideline range. Although a sentencing recommendation need not be made enthusiastically, *United States v. Johnson*, 187 F.3d at 1135, when the government obligates itself to make a recommendation at the low end of the guidelines range, it may not introduce information that serves no purpose but "to influence the court to give a higher sentence." *Id.* This prohibition precludes referring to information that the court already has before it, including statements related to the seriousness of the defendant's prior record, *Mondragon*, 228 F.3d 978, "statements indicating a preference for a harsher sentence," *United States v. Franco-Lopez*, 312 F.3d 984, 992 (9th Cir. 2002) (quoting *Johnson*, 187 F.3d at 1135), or the introduction of evidence that is irrelevant to any matter that the government is permitted to argue. *Johnson*, 187 F.3d 1129. Such state-

---

[4]The government contends that defense counsel's assertion that Whitney was not a leader was a breach of the plea bargain's requirement that the defendant testify truthfully in the course of his cooperation with the government, and that this putative breach relieves it of its obligation not to disclose any information previously provided to the government by Whitney. This argument is without merit. The plea agreement explicitly reserved to the defendant the right to argue against the role enhancement and the government freely entered into the agreement. The government cannot now contend that adherence to the terms of the plea agreement is a breach. Moreover, the provision addressing the defendant's obligation to answer truthfully to questions refers to statements made as Whitney fulfills his commitment to cooperate with various law enforcement agencies, and does not extend to legal arguments made by counsel at sentencing. "Plea agreements are contracts, and the government is held to the literal terms of the agreement," *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999).

ments are recognized as introduced "solely for the purpose of influencing the district court to sentence [the defendant] more harshly." *Id.* at 1135.

[3] In the instant case, the U.S. Attorney asserted that Whitney was a "good thief," and pointed to past offenses already included in the record before the court to contend that Whitney had "re-victimized" his victims from a previous identity theft committed prior to the commission of this offense. This conduct is substantively indistinguishable from that in *Mondragon*, in which the prosecutor responded to the defense's characterization of the defendant's crimes as "petty" by pointing out the "serious nature" of the prior offenses and noting the frequency of the defendant's prior failures to appear and instances of resisting arrest, all of which were evident in the defendant's record. 228 F.3d at 979. Here, as in *Mondragon*, "the [AUSA's] comments did not provide the district judge with any new information or correct factual inaccuracies, [and therefore] the comments could have been made for only one purpose: to influence the district court to impose a harsher sentence than that suggested by appellant's counsel." *Id.* at 980. In this case, the defendant was precluded from requesting a below-guidelines sentence by the parties' contract, and he did not do so. Thus, the AUSA's statements, refuting the defense counsel's characterization of Whitney's criminal history, could only have been intended as an argument for a sentence greater than the within-guideline sentence requested by the defense.

*Mondragon* is distinguishable from this case but not in a material respect. While *Mondragon* involved a plea agreement that required the government to take no position with regard to the defendant's sentence and Whitney's plea agreement affirmatively required the prosecution to recommend a sentence at the low end of the guidelines, the court recognized the prosecutor's statement in *Mondragon* as violative of the parties' agreement because it was an argument intended to persuade the court to adopt a sentence higher than that advo-

cated by the defendant's counsel, not merely because it represented a "position." The principles in *Mondragon* therefore apply whenever the prosecutor's statements serve no purpose but to argue for a harsher sentence than that which he was obligated to recommend.

The government's position is that the advisory nature of the guidelines renders it necessary for it to make an argument to justify even its low-end guideline sentence recommendation. It contends that in this case the court might have elected to depart downward from the guideline range, and the statements of the prosecutor were intended to ensure that such a departure would not occur. The government's argument is disingenuous. Here, the defendant did not request a below-guideline sentence, and, in fact, he could not do so under the terms of his plea agreement. Additionally the presentence report recommended a sentence that was more than double the low-end guidelines range, and the district court gave no indication that it would consider imposing a sentence lower than that which the government was obligated to recommend. The government's statements regarding Whitney's criminal history and his success as a thief could only have been intended to persuade the court to impose a sentence higher than the within-guideline sentence that the defendant was bound to request, and not to guard against an unsolicited downward departure.

**[4]** Although the prosecutor uttered the requisite words by recommending a sentence at the low-end of the guidelines, her additional statements constituted an argument for a higher sentence, breached the government's obligation to recommend a low-end Guideline sentence, and likely had an impact on the far-above-guideline sentence imposed. We reject the government's contention that it was compelled to provide an argument in order to support its low-end guidelines sentence recommendations. To the contrary, permitting it to argue implicitly for a harsher sentence when there is no indication of a possible below-guidelines sentence would render its obli-

gation to recommend a low-end sentence illusory. *See Franco-Lopez*, 312 F.3d at 988-89 (recognizing that the government may breach its obligations under its plea agreement by complying with the explicit terms of the agreement in such a way that renders its promises illusory). In light of *Mondragon*, the government's breach was "clear or obvious under the law," *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 741 (9th Cir. 2009) (internal quotation marks omitted). The prosecutor's reference to inculpatory statements made by Whitney during the course of his cooperation bore on the applicability of the two-level sentencing enhancement as well and similarly constituted an obvious breach. Both violations therefore satisfy the first two prongs of plain error review — that there must be an error and that it must be plain.

## B.   Affects Substantial Rights

**[5]** To prevail on plain error review, Whitney must additionally show that the government's conduct affected both his substantial rights and the integrity, fairness or public reputation of the judicial proceedings. *Cannel*, 517 F.3d at 1176. To conclude that a defendant's substantial rights were affected, "there must be a reasonable probability that the error affected the outcome of the [sentencing]." *United States v. Marcus*, 130 S.Ct. 2159, 2164 (2010). It is inherently difficult to identify the effect of any discrete set of errors on a district court's multifaceted sentencing determination. Nonetheless, breaches of a plea agreement are not exempted from the plain error requirement that prejudice be shown to a reasonable probability, rather than assumed. *Puckett*, 129 S.Ct. 1423. A court may determine that the defendant's substantial rights were not affected if he could not possibly have received his bargained-for benefit even in the absence of the government's breach, or if he receives that benefit notwithstanding the breach. *See id.* at 1432-33. In this case, the recommendation did not involve the applicability of a sentencing reduction or enhancement factor that may have been foreclosed for other reasons. *Compare Puckett*, 129 S.Ct. at 1433 (recognizing that the defen-

dant was ineligible for an acceptance of responsibility reduction even in the absence of the government's breach due to his commission of additional post-plea offenses). Whitney could have received any sentence within the statutory range. The government's recommendation regarding sentence length was one factor to be weighed by the district court in arriving at a sentence that takes many competing considerations into account. *See, e.g. United States v. Carty,* 520 F.3d 984, 989-94 (9th Cir. 2008) (en banc)(discussing considerations relevant to sentencing decisions).

**[6]** It is likely that the government's breaches affected Whitney's sentence in two distinct ways. First, Whitney was prejudiced by the government's disclosure that he made statements during the course of his cooperation that purportedly placed him in a supervisory role. The court was required to determine whether a leadership enhancement was proper based on facts within the record that would support such a finding. As discussed more fully below, there were insufficient facts within the record to support the conclusion that Whitney exercised the requisite supervision to support this enhancement.[5] Thus, it is likely that the government's representation that Whitney admitted to a leadership role influenced the court's overall view of the appropriate sentence when it decided to depart from the 41 to 51 month range to 87 months, as well as its imposition of the two-level leadership enhancement, *see infra* Part II, which increased the guideline range that played an important part in the ultimate calculation of Whitney's sentence. Accordingly, we must conclude that it is probable that the AUSA's breach of the nondisclosure terms of its plea agreement affected Whitney's sentence and therefore his substantial rights.

**[7]** Second, taking the variable nature of sentencing into account, it is likely that the government's breach in implicitly arguing for a harsher sentence rather than unequivocally

---

[5]*See infra* Part II.

expressing its preference for a low-end guideline sentence deprived Whitney of an important consideration relevant to the determination of his sentence and resulted in a higher sentence than he would have otherwise received. This court has previously recognized the importance of the government's sentencing recommendation as a bargained-for benefit to the defendant, and held that the persuasive force behind a sentencing recommendation is enhanced when it is urged by the government in addition to the defense. *See United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001) ("[W]hen the sentencing court hears that both sides believe a certain sentence is appropriate and reasonable in the circumstances, this is more persuasive than only the defendant arguing for that sentence."). *See also United States v. Alcala-Sanchez*, 666 F.3d 571(9th Cir. 2012). Whitney's attorney requested a within-guideline sentence while the probation officer recommended a substantial upward departure. It is probable that the court would have given some weight to the government's unambiguous recommendation of a low-end guideline sentence. Because Whitney did not receive a sentence on the low-end of the guideline range, we cannot say that he received the benefit of his bargain. Additionally, because a sentence lower than his 87-month punishment was not foreclosed to him, and the sentence he received was more than twice the low-end sentence in the guideline range, we conclude that there is a reasonable probability that Whitney was also prejudiced by the government's breach in arguing for a higher sentence.

## C.   Integrity of Judiciary

**[8]** The final consideration under plain error review is whether the error affected the fairness and integrity of the judiciary. A defendant forfeits many of his constitutional rights when he enters into a plea agreement with the government. In addition to sacrificing these rights, he relieves the government of its burden to prove his guilt beyond a reasonable doubt, and eliminates the need for the government to

expend its limited time and resources on a full criminal trial. He does so not out of a benevolent concern for the efficient allocation of government resources, but in order to receive the benefits of the bargain into which he has entered. The government's inducement of the defendant's plea, and the consequent forfeiture of his constitutionally-guaranteed rights, requires that "a promise or agreement of the prosecutor . . . must be fulfilled." *Santobello*, 404 U.S. at 262. "The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *Mondragon*, 228 F.3d at 981. In some cases, when the defendant himself has engaged in conduct that undermined the parties' obligations, strict compliance is not necessary to ensure that the integrity of the judiciary is maintained, notwithstanding the government's breach. *See, e.g., Puckett*, 129 S.Ct. 1423 (defendant's additional crimes committed prior to sentencing undermined the legitimacy of granting his bargained-for acceptance of responsibility reduction).

**[9]** Here, both breaches undermined the integrity of the judiciary and neither was justified by any misconduct on the part of Whitney. With respect to the government's improper disclosure, its promise of non-disclosure initially made in the informal immunity agreement as a part of the parties' first discussions and reasserted in the plea agreement, induced Whitney to make statements of a possibly inculpatory nature. Allowing the government to breach its reciprocal obligation would violate the judicially-sanctioned plea bargaining process that requires that promises made by the government which induce the forfeiture of the defendant's rights must be fulfilled. Similarly, the government promised to make a low-end guideline sentence recommendation in return for Whitney's willingness to refrain from exercising a number of his rights, including his right to argue for a below-guideline sentence, his right to appeal a within-guideline sentence, and the right to a jury trial to establish his guilt in the first instance. Ignoring the government's failure to adhere to this promise in the face of Whitney's own compliance would substantially

challenge notions of fairness and integrity within the judiciary. Thus, in the absence of clearly countervailing factors, the government's breach of the parties' plea agreement must be considered a serious violation of the integrity of the plea bargain process and the judicial system.

**[10]** Whitney has satisfied all four requirements to show that his sentence was affected by plain error, and he is entitled to relief.

## II.

Regardless of the government's breaches of its plea agreement, the imposition of the two-level leadership enhancement by the district court was clear error and provides an alternative ground upon which Whitney's sentence must be vacated.

**[11]** The Sentencing Guidelines allow for a two-level role enhancement if a defendant is an "organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). A court may impose this enhancement if there is "evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Ingham*, 486 F.3d 1068, 1074 (9th Cir. 2007) (quoting *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996)) (internal quotation marks omitted). Under this circuit's clear articulation of § 3B1.1(c), "even a defendant with an important role in an offense" cannot receive an enhancement unless there is also a "showing that the defendant had control over others." *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998) (internal quotation omitted).[6] This renders conduct

---

[6]The government contends that the commentary to the 1993 amendments to the Sentencing Guidelines altered the requirements for imposing a leadership enhancement and permits the enhancement to be imposed without evidence that the defendant exercised control over other persons. The commentary attempts to reconcile a split among the circuits in the

which may have been integral to the success of the criminal enterprise, *see United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir. 1994), or conduct that reflects a high degree of culpability, *United States v. Hoac*, 990 F.2d 1099, 1111 (9th Cir. 1993), insufficient to support a leadership enhancement unless the defendant also exercised the requisite control over others.

It is not necessary that the district court make specific findings of fact to justify the imposition of the role enhancement. *Lopez-Sandoval,* 146 F.3d at 717. There must, however, be evidence in the record that would support the conclusion that the defendant exercised the necessary level of control. *Id.* at 718. This factual determination is subject to review for clear

---

application of § 3B1.1, and states that "to qualify for an adjustment under this section, the defendant must have been the organizer, leader, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2 (2011). The commentary states further that an upward departure, as opposed to an enhancement, "may be warranted, however, in the case of a defendant who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.* The government's reliance on the commentary is therefore misplaced. As this and other circuits have continued to recognize in cases following the adoption of the 1993 amendments, the guideline-mandated enhancement is proper only if the defendant exercised the requisite control over others. *See United States v. Salcido-Corrales*, 249 F.3d 1151, 1154 (9th Cir. 2001) ("[T]o sustain a finding that a defendant in fact played one of the four specified roles, there must be evidence that the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out a crime.")(internal citation omitted); *see also United States v. Williams*, 605 F.3d 556, 570 (8th Cir. 2010)("[T]wo elements operate to enhance a defendant's sentence . . .[,] a leadership role over at least one other individual and numerosity of participants."); *United States v. Longstreet*, 567 F.3d 911, 925 (7th Cir. 2009)(to receive an enhancement under § 3B1.1, defendant must "have had some real and direct influence . . . upon one other identified participant"). Control over the activities or assets of a criminal organization may therefore support an upward departure from the guidelines, but may not contribute to the calculation of the guideline sentence. *See United States v. Gort-DiDonato*, 109 F.3d 318 (6th Cir. 1997).

error. *Id.* at 716; *United States v. Koenig*, 952 F.2d 267, 274 (9th Cir. 1991).

**[12]** When imposing the enhancement, the court determined that Whitney was "complicit" in the fraud, and found that a two-level increase was appropriate based on his participation in the offense. The court did not cite particular acts by Whitney that it relied upon to justify the enhancement. It stated, however, that Whitney was not the ring leader, adding only that he was "the guy that facilitated the crime." This finding is insufficient to justify an enhancement under U.S.S.G. § 3B1.1(c) because it fails to identify any supervisory role over other individuals.

Regardless of the district court's specific statements at sentencing, the enhancement is proper nonetheless if there is evidence in the record that would support the conclusion that Whitney did, in fact, exercise the requisite control over others. No such evidence is present here.[7] Although the presentence report concludes that Whitney "had an aggravating role in the offense as an organizer, leader, manager, or supervisor," the record contains no factual basis that supports the conclusion that Whitney did, in fact, exercise any control over others. As this court held in *Harper*, 33 F.3d 1143, a sentencing court may not conclude that an enhancement is appropriate where the record lacks evidence that the defendant exercised the requisite control — even if the presentence report states that it is. To the contrary, there must be "reference [in the record] . . . to any specific facts that indicate [the defendant] exercised control over or organized others in committing this crime." *Id.* at 1151. Rather than support the conclusion that Whitney

---

[7]Even if we were to disregard the fact that the prosecutor's statement regarding Whitney's admissions that impliedly placed him in a leadership role constituted a breach of the parties' plea agreement we would not find sufficient evidence. Although the prosecutor's vague generalities might prejudice the judge's view of the appropriate sentence, they still, when considered with all of the other evidence in the record, provide no legal basis for the imposition of the two-level enhancement at issue here.

exercised the necessary control, the facts included within the presentence report contradict such a finding. The report observed that it was undetermined whether there were any inmates involved besides Whitney, Paucar and Alexander — and it was never contended that Whitney exercised control over either of his co-defendants. Although the report stated that Whitney helped "manage the completion of . . . tax forms," the only individual alleged to have completed any tax forms was Whitney himself.

**[13]** Although the information and tax forms Whitney provided to Paucar were undoubtedly integral to the completion of the charged conspiracy, the centrality of Whitney's role is not relevant to the imposition of the role enhancement. The probation officer's conclusion that Whitney's activities amounted to a leadership or management role was unsupported by the facts cited in the report and cannot provide a factual basis for the court's determination that Whitney was a leader or organizer. The record is therefore insufficient to support a determination that Whitney was an organizer or leader warranting a two-level upward adjustment and the district court's finding to the contrary was clear error. *Avlia*, 95 F.3d 887.

## CONCLUSION

**[14]** Each of the errors discussed above is alone sufficient to require this court to vacate Whitney's sentence and remand for resentencing. As our circuit law requires, we must remand this matter to a different judge, although in doing so we "intend no criticism of the district judge by this action, and none should be inferred." *Johnson*, 187 F.3d at 1137 n.7; *see also Santobello*, 404 U.S. at 263; *Camper*, 66 F.3d at 233 ("The Supreme Court held in *Santobello* that if a remand for specific performance of the plea bargain were ordered . . . resentencing should take place before a different judge.").

Vacated and Remanded.