**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>UBALDO GONZALEZ-AGUILAR, AKA<br>Roberto Sanchez Aguilar, AKA<br>Arturo Diaz, AKA Arturo Cruz<br>Garcia, AKA Waldo Gonzalez, AKA<br>Wbaldo Gonzalez, AKA Jorge<br>Padilla Rodriguez,<br>*Defendant-Appellant*. | No. 12-50048<br><br>D.C. No.<br>2:11-cr-00789-<br>GHK-1<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted
April 11, 2013—Pasadena, California

Filed June 13, 2013

Before: Marsha S. Berzon, Richard C. Tallman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Criminal Law

The panel affirmed a sentence in a case in which the defendant claimed that the government breached its promise in the plea agreement to recommend a sentence at the low end of the applicable Sentencing Guidelines range by arguing in its sentencing memorandum that the defendant was a recidivist with an extensive criminal history.

The panel did not reach whether the arguments contained in the government's sentencing memorandum constituted a breach of the plea agreement because, even if a breach occurred, the defendant did not establish that his alleged breach amounted to plain error.

### COUNSEL

Matthew B. Larsen (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Michael Dore (argued) and Robert E. Dugdale, Assistant United States Attorneys; André Birotte, Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

TALLMAN, Circuit Judge:

Ubaldo Gonzalez-Aguilar pled guilty to one count of being a previously deported alien found in the United States, in violation of 8 U.S.C. § 1326, and was sentenced to 57 months of imprisonment.  On appeal, Gonzalez-Aguilar claims that the government implicitly breached its plea agreement by arguing in its sentencing memorandum that Gonzalez-Aguilar was a recidivist with an extensive criminal history.  Gonzalez-Aguilar contends that, in making this argument, the government breached its promise to recommend a sentence at the low end of the applicable Sentencing Guidelines range.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the sentence imposed by the district court.

**BACKGROUND**

On August 16, 2011, Ubaldo Gonzalez-Aguilar was charged in a one count Information with being a previously deported alien found in the United States, in violation of 8 U.S.C. § 1326.  To resolve his criminal charges, Gonzalez-Aguilar entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).  Pursuant to the terms of the agreement, the government stipulated to a 46-month sentence, the low end of the applicable Guidelines range, and agreed that it would "not seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, departures, or variances in sentence . . . be imposed, or that the Court impose a sentence other than what has been stipulated to by the parties."

After taking Gonzalez-Aguilar's guilty plea, the district court reserved approval of the plea agreement pending preparation of a presentence report so the court could make its own determination on whether to accept the plea agreement and stipulated sentence. In the Initial Presentence Report, filed on October 31, 2011, the United States Probation Office recounted Gonzalez-Aguilar's extensive record of prior offenses and determined that Criminal History Category V applied. The Probation Office calculated Gonzalez-Aguilar's resulting Guidelines range at 46 to 57 months of imprisonment.

On November 3, 2011, the government filed a sentencing memorandum, in which it evaluated Gonzalez-Aguilar's prior convictions in light of the sentencing factors articulated in 18 U.S.C. § 3553(a) and, as promised, advocated for a 46-month prison sentence followed by a three-year term of supervised release. In its memorandum, the government stated that Gonzalez-Aguilar had "14 other criminal convictions . . . for selling drugs or possessing drugs with the intent to distribute, and crimes involving weapons," and argued that he "continues to flout the law and shows no signs of stopping."

After considering the Initial Presentence Report and the sentencing positions filed by both parties, the district court declined to accept the plea agreement. The district judge concluded that a term of imprisonment for "46 months will be inadequate" and stated that he intended "to impose a sentence that is more severe than that." The court continued sentencing proceedings in order to permit Gonzalez-Aguilar to decide whether "he want[ed] to persist in the guilty plea, in which case . . . [the judge warned that] the sentence will be less favorable than that called for by the 11(c)(1)(C)

agreement." On January 30, 2012, Gonzalez-Aguilar declined to withdraw his guilty plea and proceeded to sentencing. The district court imposed a sentence of 57 months of imprisonment and three years of supervised release. Gonzalez-Aguilar immediately filed this appeal.

## DISCUSSION

"A defendant's claim that the government breached [the terms of a] plea agreement is generally reviewed de novo." *United States v. Whitney*, 673 F.3d 965, 970 (9th Cir. 2012). However, Gonzalez-Aguilar's counsel forfeited his claim by failing to timely object to the alleged breach during district court proceedings. Accordingly, we are limited to plain error review on appeal. *See United States v. Cannel*, 517 F.3d 1172, 1175–76 (9th Cir. 2008). "Relief for plain error is [only] available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 1176.

Gonzalez-Aguilar claims that the government implicitly breached the plea agreement by describing his prior convictions and including inflammatory language in its sentencing memorandum. Gonzalez-Aguilar contends that this conduct constituted a breach because the government's arguments "serve[d] no purpose but 'to influence the court to give a higher sentence.'" *Whitney*, 673 F.3d at 971 (quoting *United States v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999)). We need not decide whether the arguments contained in the government's sentencing memorandum constituted a breach of the plea agreement because, even if a breach occurred, Gonzalez-Aguilar has not established that this alleged breach amounted to plain error.

Specifically, Gonzalez-Aguilar cannot demonstrate that the alleged breach impacted his substantial rights by "affect[ing] the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Gonzalez-Aguilar argues that if the government had presented a united front with the defense in its sentencing memorandum then "it is probable" that the court would have accepted the plea agreement, but this speculative assertion is not supported by the record. *See Whitney*, 673 F.3d at 973.

The record establishes that the district court conducted its own independent evaluation of the propriety of the stipulated sentence. In doing so, the court was deeply influenced by the Initial and Revised Presentence Reports, relied extensively on the Reports' description of Gonzalez-Aguilar's criminal past, and would not have lightly disregarded the facts contained in the Reports. The district court cited its reasons for imposing a lengthier sentence based on the criminal history discussion contained in the Presentence Reports. During sentencing proceedings, the court referenced each of Gonzalez-Aguilar's fifteen offenses in the same chronological order and according to the descriptions of his criminal conduct listed in the Initial and Revised Presentence Reports. In contrast, the government's sentencing memorandum only referenced six of Gonzalez-Aguilar's fifteen prior offenses, grouped them according to offense category and not chronologically, and provided only general or partial descriptions of the charged crimes.

Gonzalez-Aguilar notes the similarities between the district court's reasons for imposing a 57-month sentence, referencing his "unbroken string of violations of law," and the government's description in its sentencing memorandum of

Gonzalez-Aguilar's "extensive string of crimes."  The mere usage of the word "string" is insufficient proof that the government's sentencing memorandum persuaded the court to reject the plea agreement or impose a harsher sentence than the agreed upon term.  Moreover, this argument ignores the impact of Gonzalez-Aguilar's extensive criminal record on an objective reader and the judge's obligation to fashion an appropriate sentence for a recidivist offender like Gonzalez-Aguilar.  18 U.S.C. § 3553(a).  The role of the court in evaluating the propriety of an 11(c)(1)(C) plea agreement is an independent one.

Furthermore, Gonzalez-Aguilar cannot claim that the district court would not have received the information contained in the government's sentencing memorandum if not for the prosecutor's alleged misconduct.  The information contained in the government's sentencing memorandum regarding Gonzalez-Aguilar's prior criminal convictions was already conveyed to the district court, in far greater detail, in the Initial and Revised Presentence Reports.  Five pages of the Initial Presentence Report, and seven pages of the Revised Presentence Report, were devoted to describing Gonzalez-Aguilar's extensive criminal history, listing fifteen separate offenses.  The district court was not required to turn a blind eye to the reality of a long criminal history in deciding whether to accept or reject the stipulated sentence the parties urged upon the court.

The Presentence Reports and the government's sentencing memorandum contain similar rhetoric, which Gonzalez-Aguilar claims is objectionable. Gonzalez-Aguilar complains that the government, in its sentencing memorandum, referenced his "extensive criminal history," described his "many past sentences, terms of probation, and five

deportations," and concluded that he "continues to flout the law and shows no signs of stopping." However, the Probation Officer included nearly identical language in the Initial and Revised Presentence Reports, detailing Gonzalez-Aguilar's "more than two decades of criminal conduct," and concluding that "[b]ased on [Gonzalez-Aguilar's] . . . prior criminal convictions and arrest history, as well as his multiple removals from the United States, it is clear that he lacks respect for the law in the United States." The Initial Presentence Report was drafted and provided to the court before the parties filed their sentencing memoranda.

As a result, Gonzalez-Aguilar has not convinced us that, absent this reference in the government's sentencing memorandum, "it is probable that" the court would have accepted the plea agreement and imposed a more lenient sentence. *Whitney*, 673 F.3d at 973.[1] Instead, Gonzalez-

---

[1] These facts are distinguishable from those present in *Whitney*, 673 F.3d 965. First, the conduct at issue in *Whitney* was far more egregious than the conduct at issue in the present case. In *Whitney*, 673 F.3d at 969, the prosecutor admitted during sentencing proceedings that she was violating the plea agreement by disclosing information obtained in confidence during a proffer from the defendant. Only after identifying this initial breach did we also conclude the prosecutor breached the plea agreement and impacted the defendant's substantial rights when, during sentencing proceedings, she argued "that [the defendant] was a 'good thief,' and pointed to past offenses already included in the record." *Id*. at 971.

In the present case, the prosecutor's alleged breach was singular, and was made in a written submission filed more than a month before the district court declined to accept the plea agreement, and almost three months before the district court sentenced Gonzalez-Aguilar. The prosecutor was practically silent at Gonzalez-Aguilar's sentencing hearing, and made no statements to the judge regarding Gonzalez-Aguilar's criminal history. Additionally, in *Whitney*, there was no comparable record of reliance by the district court judge on the

Aguilar offers only speculation to support his assertion that, absent the government's breach, the district court would have disregarded the information contained in the Presentence Reports, accepted the plea agreement, and imposed the agreed upon sentence of only 46 months. We decline to adopt Gonzalez-Aguilar's argument that, under *Whitney*, 673 F.3d at 973–74, a defendant's substantial rights are affected any time: (1) the government breaches a plea agreement; and (2) the lower sentence contained in the plea agreement "was not foreclosed" to the defendant. According to this logic, prejudice must be assumed whenever a breach is proven and "it is possible" that the defendant could have obtained the agreed upon sentence.

Mere "possibility" is insufficient to establish prejudice. Rather, as the Supreme Court has clearly stated, to prevail on plain error review, a defendant must show that the alleged error was "'prejudicial,' which means that there is a *reasonable probability* that the error affected the outcome"— here the longer sentence imposed. *United States v. Marcus*, 560 U.S. 258, 130 S. Ct. 2159, 2164 (2010) (emphasis added). The Court clarified that it is not sufficient for the defendant to state that there is a "possibility, however remote" that the defendant could have obtained a better outcome or sentence absent the error. *Id*. at 2163 (internal quotation marks omitted). Instead, where a breach of the plea

---

presentence report. There was also no evidence that the judge was influenced by anything other than the prosecutor's improvident statements during sentencing proceedings to impose a harsher sentence than the one provided in the plea agreement. Here, it is clear that the district court judge carefully reviewed the information contained in the Presentence Reports, and relied upon this information when declining to accept the plea agreement and later deciding to sentence Gonzalez-Aguilar to a 57-month term of imprisonment.

agreement is alleged, the defendant must prove that it is "reasonabl[y] probable" that he or she would have received a more lenient sentence if the government had not committed the breach, not just merely that it is "possib[le]." *Id*. at 2163–64. As we held in *Whitney*, "[t]o conclude that a defendant's substantial rights were affected, there must be a reasonable probability that the error affected the outcome of the [sentencing]." *Whitney*, 673 F.3d at 972 (internal quotation marks omitted) (second alteration in original).

"It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice[, and] . . . a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial." *Olano*, 507 U.S. at 734; *see also United States v. Lorenzo*, 995 F.2d 1448, 1458 n.4 (9th Cir. 1993) ("[I]f plain error applies, it appears that the appellants, rather than the government, [must] pay the price for the inadequacy of the record."). Absent proof of prejudice, Gonzalez-Aguilar cannot establish plain error and he is not entitled to relief.

**AFFIRMED.**