**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

ERIKA MARIA PLANCARTE,

*Defendant - Appellant*.

No. 24-327

D.C. No.
3:23-cr-01867-LAB-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted February 10, 2025
Pasadena, California

Filed May 8, 2025
Amended August 18, 2025

Before: Richard A. Paez, Sandra S. Ikuta, and Ryan D.
Nelson, Circuit Judges.

Order;
Opinion by Judge Ikuta;
Concurrence by Judge Paez

# SUMMARY[*]

## Criminal Law

The panel filed (1) an order granting a petition for panel rehearing, amending an opinion, and denying a petition for rehearing en banc; and (2) an amended opinion affirming an appellate waiver in Erika Marie Plancarte's plea agreement and dismissing her appeal from her sentence for conspiracy to transport an alien into the United States.

The panel held that the government did not implicitly breach the plea agreement, in which it agreed to recommend no more than 90 days of imprisonment, by referencing Plancarte's criminal history, expressing concern about Plancarte's conduct and recidivism, clarifying an ambiguity in the presentence report, and declining to present mitigating evidence.

Concurring, Judge Paez joined the majority in full, with the understanding that in determining whether the government has complied with "the letter and spirit of the plea agreement," courts can and in some cases must consider whether the government has presented or acknowledged mitigating evidence in its sentencing recommendation.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Amy B. Wang (argued) and Henry F. B. Beshar, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section; Criminal Division; Tara K. McGrath, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Daniel J. Yadron Jr. (argued), Appellate Attorney, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

**ORDER**

The petition for rehearing is GRANTED. The opinion filed on May 8, 2025, and published at 136 F.4th 975, is amended. The amended opinion is filed concurrently with this order, accompanied by Judge Paez's concurrence.

With these amendments, the petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

IKUTA, Circuit Judge:

Erika Marie Plancarte pleaded guilty to one count of conspiracy to transport an alien into the United States. The plea agreement bound the government to recommend a sentence of 90 days of imprisonment. We hold that the government did not implicitly breach the plea agreement by referencing Plancarte's criminal history, expressing concern about Plancarte's conduct and recidivism, clarifying an ambiguity in the presentence report, and declining to present mitigating evidence.

I

In August 2023, at the San Ysidro, California Port of Entry, Plancarte illegally transported four aliens, a woman and her three children, into the United States. A fourth child in the car was Plancarte's daughter. The woman presented a passport issued to a different person, and Plancarte produced false birth certificates for the three children. After questioning, the Border Patrol arrested Plancarte, who admitted to smuggling the four aliens into the United States. A month later, the government filed an eight-count information against Plancarte. Count 1 charged Plancarte with conspiracy to transport the woman, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I).

Plancarte entered into an agreement with the government, which provided that Plancarte would plead guilty only to Count 1, and that the government would then dismiss the remaining counts. The parties made the plea agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, which provides that the

government's "recommendation or request does not bind the court."

As relevant here, the plea agreement also included the following provisions. Plancarte agreed to request that the U.S. Probation Office prepare a presentence report ("PSR"). Nothing in the plea agreement limited "the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office." With respect to the United States Sentencing Guidelines ("Guidelines"), the parties agreed to "jointly recommend" a specified Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures.[1] Based on this agreement, the "Government agree[d] to recommend that defendant be sentenced to the greater of: [1] the low end of the advisory guideline range as calculated by the Government, [2] 90 days in custody, or [3] the time served in custody at the time of sentencing." Therefore, unless the district court imposed a time-served sentence, the government explicitly agreed to recommend 90 days in custody.[2]

In December 2023, the U.S. Probation Office filed Plancarte's PSR under seal. The PSR created ambiguity

---

[1] Specifically, the parties agreed to a base offense level of 12 under § 2L1.1(a)(3) of the Guidelines, a potential 2- or 4-level increase for certain prior immigration felonies under § 2L1.1(b)(3), a potential 2- or 3-level decrease for acceptance of responsibility under § 3E1.1, and a 2-level downward departure for early disposition under § 5K3.1.

[2] The plea agreement also contained an appellate waiver, with two exceptions. Neither exception is applicable. But, because "a defendant is released from his or her appeal waiver if the government breaches the plea agreement," *United States v. Hernandez-Castro*, 814 F.3d 1044, 1045 (9th Cir. 2016), we first determine whether the government breached the plea agreement before turning to Plancarte's appellate waiver.

about the relationship between the woman in the front seat and the three minors in the back seat. Paragraph 11 of the PSR stated that Plancarte's "cousin asked her to smuggle his wife" along with "children of the cousin's friend." This language raised the inference that the cousin's wife and the cousin's friend were different individuals, and that the three children in the back seat were not children of the cousin's wife. But the PSR later clarified that the minors in the back seat were children of the front-seat passenger (the cousin's wife). The PSR explained that the cousin's wife "identified herself, her two sons (ages 10 and 6) and daughter (age 5) as citizens of Mexico." Later, the PSR stated that the cousin's wife "and her children entered [Plancarte's] vehicle and immediately proceeded to the border."

Plancarte subsequently filed a sentencing summary chart. Plancarte calculated a guideline range from 0 to 6 months and requested "a non-custodial sentence of 2 years probation." Later that same day, the government filed its sentencing summary chart. The government calculated the same 0- to 6-month guideline range as Plancarte, but requested a sentence of 90 days custody and 2 years of supervised release, consistent with the plea agreement. The government concurrently filed its sentencing memorandum. In its memorandum, the government reiterated its request for the sentence outlined in the summary chart. It also included a footnote correcting the PSR's ambiguity regarding the relationship between the front-seat passenger and the three minors in the back seat. According to the government:

> The three backseat minors are the children of the front-seat adult. *Compare* PSR ¶ 11 ("[Plancarte] advised her cousin asked her to smuggle his wife . . . and *children of the*

*cousin's friend*.") (emphasis added), *with* ¶ 19 ("The [adult minor] and her children . . ."), ¶ 34 (same); *see also* U.S.S.G. § 2L1.1(b)(4) (imposing a four-level enhancement if the smuggling offense involves unaccompanied minors).

The cited guideline, § 2L1.1(b)(4), states: "If the defendant smuggled, transported, or harbored a minor who was unaccompanied by the minor's parent or grandparent, increase by 2 levels." The government's footnote clarified that the three minors in the back seat were accompanied by their mother in the front seat and therefore confirmed that § 2L1.1(b)(4) did not apply.

The memorandum then offered three reasons specific to Plancarte for the government's sentencing recommendation of 90 days imprisonment and two years of supervised release. First, the government described the "worrying" nature and circumstances of the offense. Specifically, Plancarte "appears to have orchestrated the fictitious documentation and backstory, traveled eight hours to commit th[e] felony offense, brought her 1-year-old daughter to the [port of entry], and attempted to smuggle four persons, including three minors." Second, the government identified "two prior alien smuggling arrests from 2022 and 2008" in Plancarte's criminal history, as stated in the PSR. The government also noted a number of additional offenses reported in the PSR, Plancarte's failures to appear resulting in a one-year extension of her probation, and Plancarte's probation revocation in another state matter. Third, the government noted that "several custodial sentences, including as long as six months, have failed to deter [Plancarte]'s recidivist behavior."

The next day, Plancarte filed a sentencing memorandum requesting a two-year term of probation.  Plancarte argued that the government breached the plea agreement by including "additional commentary meant to influence the court to impose a higher sentence," such as the government's reference to Plancarte's criminal and arrest history, prior failures to appear, and prior probation revocations.  In addition, Plancarte noted that the government referenced an irrelevant Guideline (referring to the footnote citing § 2L1.1(b)(4)).

The district court held a sentencing hearing, where Plancarte further argued that the government breached the plea agreement.  First, Plancarte argued that the government breached the plea agreement in referencing the four-level enhancement for unaccompanied minors under § 2L1.1(b)(4).  Second, Plancarte argued the government breached the agreement by stating that harsher sentences up to six months had not deterred Plancarte.  Third, Plancarte argued that the government breached the agreement by highlighting Plancarte's criminal history.

The district court rejected all three arguments.  The district court agreed with the government that its reference to § 2L1.1(b)(4) was merely correcting an inconsistency in the PSR, and it held that the government did not engage in misconduct "in correcting a misstatement in the probation report."  The district court held that the government did not err in advocating for the agreed-to sentence in the plea agreement.  In the course of the hearing, Plancarte agreed with the district court that the government was not required to present mitigating information regarding the defendant.  Therefore, the district court held that the government did not implicitly breach the plea agreement and denied Plancarte's request to transfer the case to a different judge for

sentencing. The district court sentenced Plancarte to 120 days of imprisonment and a 3-year term of supervised release. Plancarte filed a timely notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "Generally, we review a defendant's claim that the government has breached its plea agreement de novo." *United States v. Farias-Contreras*, 104 F.4th 22, 27 (9th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1316 (2025).[3]

## II

Criminal plea agreements "are essentially contracts between the government and a defendant." *Id.* at 28. As such, either party can breach the agreement by violating its terms. *United States v. Myers*, 32 F.3d 411, 413 (9th Cir. 1994) (per curiam). For example, the government cannot agree "to recommend a sentence at the low end of the applicable guideline range," but make "no recommendation" at all. *Id.* at 412, 413. Doing so violates "the terms of the plea agreement" and requires reversal and remand for resentencing. *Id.* at 413. In addition to complying with the literal terms of the contract, *Farias-Contreras*, 104 F.4th at 28, the parties must also comply with the "spirit of the plea agreement," *id.* at 31. That means the parties' arguments "must be made in good faith and advance the objectives of the plea agreement." *Id.* We have compared this to contract

---

[3] "We have not been entirely consistent in our standards for reviewing a claim that the government breached a plea agreement." *United States v. Alcala-Sanchez*, 666 F.3d 571, 575 (9th Cir. 2012) (identifying both de novo and clear error standards of review). However, because the government argues that it did not implicitly breach its plea agreement with Plancarte under even a de novo standard, we do not resolve when a different standard of review may apply.

law, which "implies a covenant of good faith and fair dealing in every contract." *Id.* (citing *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003)). "This is a fact-specific inquiry based on contract principles." *Id.* In conducting this inquiry, courts must consider the "totality of circumstances." *Id.*

The government may implicitly breach a plea agreement by making arguments to the district court that undermine the parties' agreement. But our court, sitting en banc, expressly disclaimed finding a "per se" implicit breach of a plea agreement when the government "present[s] *any* information already known and contained in the" PSR. *Id.* The government may be able to do so when "respond[ing] to arguments" raised by the defense. *Id.*

The government may undermine the plea agreement if it introduces "information that serves no purpose but to influence the court to give a higher sentence," *id.* at 28 (quoting *United States v. Whitney*, 673 F.3d 965, 971 (9th Cir. 2012) (cleaned up)), or if it "purports to make the promised recommendation while 'winking' at the district court to impliedly request a different outcome," *id.* (quoting *United States v. Heredia,* 768 F.3d 1220, 1231 (9th Cir. 2014)). One such example of bad faith behavior includes making inflammatory or pejorative comments about a defendant's past offenses, such as analogizing drug dealers to vampires. *See id.* at 28–29. Or, the government may act in bad faith by inviting "the district court's skepticism as to its recommendation" by noting a difference of opinion in the prosecutor's office as to the correct sentence. *Id.* at 29. A court may consider such conduct to weigh in favor of finding that the government implicitly breached the plea agreement.

On the other hand, so long as the government's arguments are not precluded by the literal text of the plea agreement, *id.* at 30–31, the government may make arguments in support of its sentencing recommendation, including by highlighting aspects of the defendant's offense or criminal history, *see id.* at 29; *cf. United States v. Minasyan*, 4 F.4th 770, 780–81 (9th Cir. 2021) (holding that the government did not implicitly breach the plea agreement by reiterating facts from the PSR that were relevant to the defendant's sentencing). And when the defendant argues for a below-Guidelines sentence, the government may oppose the defendant's argument and supplement the facts with relevant information, including by repeating facts in the PSR. *Farias-Contreras*, 104 F.4th at 30. However, the "government does not have carte blanche to use inflammatory rhetoric," *id.* at 29, and the "government's response [to a defendant's request for a sentence lower than what the government recommends] must be tethered to its obligations under the plea agreement," *id.* at 31.

### III

On appeal, Plancarte argues that the government implicitly breached its agreement to recommend no more than 90 days of imprisonment.[4] The government repeatedly committed to its 90-day recommendation, consistently reminding the district court that it sought a 90-day custodial sentence. According to Plancarte, the government nonetheless failed to comply with the spirit of the plea agreement in three ways. First, the government referred to Plancarte's criminal history and mentioned that a prior six-

---

[4] To the extent Plancarte argues that the government expressly breached the literal terms of the plea agreement, the record belies that claim, and we reject it.

month sentence failed to deter Plancarte's recidivist behavior. Second, Plancarte argues that the government engaged in pejorative editorializing, including by referencing the unaccompanied minor Guideline in a footnote. According to Plancarte, these comments were not a fair response to Plancarte's request for a non-custodial sentence. Finally, Plancarte notes the government did not present any mitigating evidence. We consider these arguments in turn.

We look "first to the plain language of the plea agreement." *Id.* at 30. Nothing in the plea agreement prohibited the government from "responding to [Plancarte's] request for a sentence lower than what is recommended by the government," *id.*, which here was a 90-day custodial sentence. And the government's response did not undermine the plea agreement. First, the government permissibly pointed to Plancarte's criminal history as part of its advocacy for a 90-day custodial sentence. As Plancarte acknowledged, the government's description of her criminal history was accurate. In correctly stating that Plancarte had served prior custodial sentences for offenses other than alien smuggling, including a six-month custodial sentence, the government did not suggest that such sentences were necessarily warranted in the present case. It was likewise permissible for the government to highlight how prior sentences had failed to deter Plancarte from her recidivist conduct, because the government tethered its comments to its permissible advocacy for a 90-day custodial sentence. *Id.*

Second, the government did not use any pejorative expressions to describe Plancarte. Describing Plancarte's recidivism as "worrying" is not as severe as comparing the defendant to a "vampire," *id.* at 29, or introducing a victim impact statement calling the defendant "mean, ugly, scary,

controlling, manipulating," *United States v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999). Such comments impugn the defendant's character and person, but describing Plancarte's offense conduct as "worrying" does not. Nor did the "depth and tone" of the government's response, which was tethered to Plancarte's request for a non-custodial sentence, amount to the government "implicitly recommending a higher sentence than agreed upon." *Heredia*, 768 F.3d at 1233. Moreover, the government's reference to § 2L1.1(b)(4), which sets out an enhancement for smuggling an unaccompanied minor, did not violate the spirit of the plea agreement. As explained by the government and district court, this reference was to clarify an ambiguity in the PSR to specify that such an enhancement did not apply to Plancarte.

Third, Plancarte repeatedly notes that the government's presentation was not tempered by mitigating evidence. But the government is not required to present mitigating evidence to avoid implicitly breaching a plea agreement, *see Farias-Contreras*, 104 F.4th at 29. Plancarte acknowledged as much at the sentencing hearing.

The government did not implicitly breach its plea agreement with Plancarte. Instead, the government stuck to the letter of the agreement, and it did not make statements in bad faith to undermine the parties' bargain. The district court properly reached its own conclusion as to Plancarte's sentence, as anticipated by the plea agreement. Therefore, we enforce the appellate waiver in the plea agreement, and we dismiss the appeal.

**DISMISSED.**

PAEZ, Circuit Judge, concurring:

I join the majority opinion in full. I do so with the understanding that in determining whether the government has complied with the "letter and spirit of the plea agreement," courts can and in some cases must consider whether the government has presented or acknowledged mitigating evidence in its sentencing recommendation. *United States v. Farias-Contreras*, 104 F.4th 22, 31 (9th Cir. 2024) (en banc).

In this case, the district court judge remarked that the government's failure to present or acknowledge mitigating evidence was irrelevant to the question of breach because it is the criminal defense attorney's job to "advocate on behalf of the Defendant, and point out the mitigating factors," while the government "is supposed to hold the balance true and . . . [point to] aggravating factors." But the inclusion, omission, or contestation of mitigating factors in the government's sentencing recommendation can be evidence of whether the government is "inviting the court's skepticism as to the government's bona fide position," *id.* at 29-30, or acting "solely for the purpose of influencing the district court to sentence [the defendant] more harshly," *id.* at 30 (alteration in original) (quoting *United States v. Whitney*, 673 F.3d 965, 971 (9th Cir. 2012)). In evaluating whether the government breached a plea agreement, courts must consider the "totality of circumstances," and the presentation or acknowledgment of mitigating evidence—or the lack thereof—can be one relevant circumstance. *Id.* at 31.

We have recognized the relevance of this circumstance on multiple occasions. For example, in *Farias-Contreras*, we held en banc that the government's agreement that

"Farias-Contreras's physical condition was a mitigating factor for purposes of sentencing" was a fact that "weigh[ed] against finding a breach." *Id.* at 29. Likewise, in *United States v. Heredia*, which was cited favorably in *Farias-Contreras*, *id.*, we observed that "given the government's promise of leniency, it is notable that its sentencing memorandum contained no mitigating information at all." *United States v. Heredia*, 768 F.3d 1220, 1234 (9th Cir. 2014). This was notable because absent any mention of mitigating circumstances to balance the aggravating circumstances the government emphasized, "the reader [was] left to wonder why the government believed a low-end Guidelines sentence was appropriate in the first place." *Id.*

Here, the failure to present any mitigating evidence was a relevant consideration in evaluating whether the government's recommendation left the district court to "wonder why the government believed a [mid-range] Guidelines sentence was appropriate in the first place," as opposed to the six-month sentence at the high end of the Guidelines. *Id.* When the "government freely undert[akes] a broad commitment . . . to avoid even the implication that a sentence other than the stipulated one may be appropriate," the government is not permitted to imply "that a sentence other than [the agreed-to recommendation] could be advisable." *Id.* Although the government's failure to acknowledge mitigating circumstances did not tip the scale in favor of finding breach here, in some circumstances, it may affect whether the government has implicitly breached the plea agreement.