FILED

FEB 23 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10212 |
| Plaintiff - Appellee, | D.C. No. 1:12-CR-00234-LJO |
| v. | MEMORANDUM[*] |
| SAUL MORALES, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted September 13, 2016
San Francisco, California

Before: GOULD and BERZON, Circuit Judges, and TUNHEIM,[**] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

Saul Morales appeals his convictions and sentence, following a jury trial, for manufacturing, possessing with intent to distribute, and aiding and abetting the manufacture and possession of marijuana; conspiring to manufacture, distribute, and possess with intent to distribute marijuana; and maintaining drug-involved premises and aiding and abetting, in violation of the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 856(a)(1), and the federal aiding and abetting statute, 18 U.S.C. § 2. We affirm Morales's conviction. We vacate the sentence because the two-level sentencing enhancement for possession of a dangerous weapon in connection with the offense should not have been applied.

1.     The district court's jury instruction regarding aiding and abetting was not erroneous. The district court instructed that to find Morales guilty under an aiding and abetting theory, the jury must conclude that he "knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of [the crime charged]," that "the defendant acted before the crime was completed," and that "[t]he evidence [showed] beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit [the crime charged]." The instruction was consistent with Ninth Circuit case law regarding aiding and abetting. *See, e.g.*, *United States v. Goldtooth*, 754 F.3d 763,

2

768 (9th Cir. 2014); *see also United States v. Sayetsitty*, 107 F.3d 1405, 1411-12 (9th Cir. 1997). The district court's instruction accurately conveyed the required intent element.

2. The district court's jury instruction regarding conspiracy was not erroneous. To establish a drug conspiracy, the government must prove "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001). Proof that "the defendant *knew* the agreement had an unlawful objective" is not required. *See Cheek v. United States*, 498 U.S. 192, 199 (1991); *United States v. Ching Tang Lo*, 447 F.3d 1212, 1230 n.13 (9th Cir. 2006) (citing *Staples v. United States*, 511 U.S. 600, 622 n.3 (1994) (Ginsburg, J., concurring)).

3. The district court did not abuse its discretion in granting the government's motion in limine to exclude evidence regarding the legality under state and local law of the cultivation of small amounts of marijuana for medical purposes. The excluded evidence was not relevant to Morales's defense, as neither medical necessity nor mistake of law constitutes a defense to federal drug charges. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490-91, 492 n.5 (2001); *Lo*, 447 F.3d at 1230 n.13. Moreover, Morales *was* permitted to introduce evidence regarding so-called "identification documents" posted at the site of each

3

marijuana plot, for the limited purpose of demonstrating that others exercised control over the plots. He was also permitted to cross-examine witnesses regarding whether Tulare County regulations required fencing at marijuana plots, to refute the government's assertion that the fencing served to "hide" the marijuana from authorities.

4. The district court did not err in denying Morales's motion for a judgment of acquittal with respect to Count III (possession of marijuana with the intent to distribute). Morales was not merely "present" at properties on which police discovered more than 4,000 marijuana plants growing. He owned the properties. The government also adduced testimony that Morales was closely involved with the marijuana grows on his property and that growers supplied him with marijuana in lieu of rent. Morales was arrested with small quantities of marijuana on his person, as well as a large amount of cash. Marijuana processing materials, including a digital scale, were found in Morales's house. Morales owned a second property which witnesses described as a "stash house" for marijuana. The evidence was more than sufficient for the jury to conclude that Morales exercised "ownership, dominion, or control over the [marijuana] itself *or the premises . . .* in which the [marijuana was] concealed." *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999) (emphasis in original) (internal quotation marks omitted).

4

5. The district court did not abuse its discretion in concluding that a testifying police officer's prior felony drug conviction and pending administrative investigation were not material for *Brady/Giglio* purposes. *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). Evidence of the conviction would have been inadmissible under the Federal Rules of Evidence for several reasons. First, the conviction was expunged under California law. *See* Fed. R. Evid. 609(c)(1). Second, the conviction was more than ten years old, and because it was not for a crime involving dishonesty or false statements, it was of limited probative value relative to its prejudicial effect. *See* Fed. R. Evid. 609(b)(1). Finally, Morales's contention that the evidence could have led to admissible evidence if timely disclosed is entirely vague and speculative.

6. The district court did not err in applying sentencing enhancements for Morales's role in the offense, U.S.S.G. § 3B1.1(a), and for maintaining drug-involved premises, U.S.S.G. § 2D1.1(b)(12). The enhancement for being a leader *or* organizer of a criminal scheme "applies to defendants who have the ability and influence necessary to *coordinate the activities* of others to achieve the desired result. . . ." *United States v. Doe*, 778 F.3d 814, 824-25 (9th Cir. 2015) (emphasis added). Here, there was adequate evidence that Morales organized the criminal activity. As a landlord who rented his property to marijuana growers, he

5

determined who participated in the scheme. As he could have terminated the leases of his coconspirators at any time, Morales also determined the extent of his coconspirators' participation. Morales also managed the assignment of plots to individual tenants for marijuana grows; distributed raw materials for marijuana cultivation (including starter plants and water for irrigation); and managed access to centralized locations for the processing of the marijuana. A witness testified at trial that Morales instructed her to deal with the police if they searched the property because she spoke English well. There was ample evidence from which the district court could conclude that Morales was at least an organizer, and perhaps a leader, of the criminal conspiracy.

With respect to the enhancement for maintaining drug-involved premises, Morales acknowledged that he was aware of the extensive marijuana cultivation operation on his property and that he derived revenue from the growers involved. Moreover, the jury convicted Morales of a crime with the same elements. The district court did not err in applying the enhancement.

7. The district court erred, however, in its application of a two-level sentencing enhancement for possession of a "dangerous weapon (including a firearm)." U.S.S.G. § 2D1.1(b)(1).

The district court mentioned at sentencing both the presence of what the

6

court described as a "probably inoperable" .22 rifle in Morales's kitchen, and the firearms found in the possession of Morales's coconspirators, but did not squarely premise the firearms enhancement on one or the other, or on both. As to the .22 rifle, the district court did not rule on Morales's contention that it was "clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.11(a). The Application Note to Subsection (b)(1) states that it would be "clearly improbable" that an *unloaded* hunting rifle in the closet of a defendant's residence would be connected with the underlying offense, even where that defendant was arrested at his residence. *Id.* That a firearm is not currently useable is therefore of *some* pertinence in determining whether it is "clearly improbable" that the gun was kept in connection with the offense. Without a determination of whether or not the gun was operable, the district court could not – and did not – consider all the factors relevant to the "clearly improbable" standard. The district court did note that inoperable guns can, under some circumstances, be used for protection, as they may instill fear despite their defects. *See United States v. Smith*, 905 F.2d 1296, 1300 (9th Cir. 1990), *superseded by statute on other grounds*. But that is true of an unloaded gun as well. The Application Note indicates that the nonfunctional nature of a stowed firearm is nonetheless pertinent to the "clearly improbable" inquiry.

To the extent the district court's application of the dangerous-weapon enhancement was based on the firearms possessed by Morales's coconspirators, U.S.S.G. § 1B1.3(a)(1)(B) requires that a co-defendant's acts in furtherance of a jointly undertaken criminal activity be "reasonably foreseeable" to the defendant to justify imputing them to the defendant for sentencing purposes. The district court did not so find. Instead, it relied solely on the fact that some of the conspirators had guns for the purpose of protection. *See United States v. Garcia*, 909 F.2d 1346, 1350 (9th Cir. 1990). That finding was inadequate for the purposes of U.S.S.G. § 1B1.3(a)(1)(B).

Because of the absence of factual findings by the district court regarding the operability of the .22 rifle, and regarding the foreseeability to Morales that his coconspirators possessed operable firearms, we cannot say that the district court explained the reasoning behind its sentence "sufficiently to permit meaningful appellate review." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008).

8. The gun enhancement increased Morales's offense level from 34 to 36, and his recommended Guidelines range from 168-210 months to 210-262 months. The district court placed exceptional weight on the possession of firearms, stating three times at sentencing that "guns change everything,"and telling Morales that it was "finding these horrid consequences for not just the drugs, but the guns." After the

8

court issued its sentence, the judge's parting words to Morales concerned the significance of the guns to "the way judges sentence."

Because the district court procedurally erred in imposing the gun enhancement and stressed the importance of that enhancement to the sentence imposed, we vacate the sentence and remand for consideration of the specific factual issues necessary to impose the gun enhancement, and for resentencing in light of the findings made. *See United States v. Naranjo*, 52 F.3d 245, 251 (9th Cir. 1995); *see also United States v. Lloyd*, 807 F.3d 1128, 1143 (9th Cir. 2015).

9.      Morales also argues that the sentence imposed, 210 months, was substantively unreasonable. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1054-58 (9th Cir. 2009). As we have vacated the sentence imposed, we do not reach that question.

Morales's conviction is **AFFIRMED,** his sentence is **VACATED,** and we **REMAND** for resentencing.