NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 10 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-1528 |
| Plaintiff - Appellee, | D.C. No. 2:18-cr-00171-TLN-1 |
| v. | |
| FIDEL SANCHEZ-CRUZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted September 11, 2024
San Francisco, California

Before: BYBEE and MENDOZA, Circuit Judges, and M. FITZGERALD, District Judge.[**]
Partial dissent by Judge MENDOZA.

Fidel Sanchez-Cruz challenges two sentencing enhancements applied by the

district judge at his sentencing.  We review a district court's application of the

Sentencing Guidelines to the facts of a given case for abuse of discretion, and its

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Michael W. Fitzgerald, United States District Judge for the Central District of California, sitting by designation.

1

factual findings for clear error. *United States v. Hernandez-Guerrero*, 633 F.3d 933, 935 (9th Cir. 2011). We have jurisdiction under 28 U.S.C. § 1291 and affirm the application of both enhancements.

1. The district judge appropriately applied the aggravating role enhancement. Under United States Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.1(a), four levels are added to the defendant's base offense level if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a) (U.S. Sent'g Comm'n 2021). The leader enhancement is applicable if there is "evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (quotations omitted). An "important role" or "conduct that reflects a high degree of culpability" will not be enough. *Id.* "There must, however, be evidence in the record that would support the conclusion that the defendant exercised the necessary level of control." *Id.*

Mr. Sanchez-Cruz argues that the district judge relied on "selective excerpts" of other participants' statements when applying the aggravating role enhancement.

At sentencing, the district judge discussed post-*Miranda* statements from Mr. Sanchez-Cruz's co-defendants. One co-defendant said the boss was named "Cheny" and identified Mr. Sanchez-Cruz as "Cheny." Another said that the person in charge

2

of the garden was named El Gato and identified Mr. Sanchez-Cruz as El Gato. Another stated that her boyfriend (another co-defendant) worked for Mr. Sanchez-Cruz, who was the boss, and that she knew this because she heard Mr. Sanchez-Cruz giving orders and others asking for instructions. And although multiple defendants may have equivocated during their statements, the district judge determined these statements had not been "walk[ed] back," especially considering that multiple defendants said they were concerned for their families' safety because they were speaking with officers.

The district judge also relied on photographs provided by the government prior to sentencing. In them, Mr. Sanchez-Cruz wore "civilian clothes"—a white polo shirt and jeans—while three other individuals took supplies out of the trunk of a car wearing "full camouflage fatigues, including hats." Mr. Sanchez-Cruz is seen pointing and speaking to the "workers."

Although one co-defendant walked back his statement in a signed letter, and another co-defendant, in an interview with a private investigator hired by Mr. Sanchez-Cruz's attorney, denied ever saying that Mr. Sanchez-Cruz was the boss during her interview with officers, the district judge had ample reason to apply the four-level leader enhancement.

2.    The district judge appropriately applied the firearm enhancement. Under U.S.S.G. § 2D1.1(b)(1), two levels are added to the defendant's base offense

3

level if "a dangerous weapon (including a firearm) was possessed" in connection with the charged offense. U.S.S.G. § 2D1.1(b)(1) (U.S. Sent'g Comm'n 2021). The district judge applied the firearm enhancement because officers found a 20-gauge shotgun in Mr. Sanchez-Cruz's ex-wife's Corning, California home, alongside twenty-four grams of cocaine, a digital scale, packaging materials, three bags of marijuana seeds, and nearly four pounds of marijuana. Officers found the driver's license of Mr. Sanchez-Cruz's girlfriend in the room[1] and Mr. Sanchez-Cruz's daughter told officers that this girlfriend would sometimes stay in that room with him.

We apply U.S.S.G. § 2D1.1(b)(1) "broadly," and have concluded that the "'offense' in this context refers to the 'entire course of criminal conduct,' not just the crime of conviction." *United States v. Gomez*, 6 F.4th 992, 1008 (9th Cir. 2021) (quoting *United States v. Willard*, 919 F.2d 606, 609 (9th Cir. 1990)). "[T]he government simply bears the burden of proving that the weapon was possessed at the time of the offense." *United States v. Alaniz*, 69 F.4th 1124, 1126–27 (9th Cir. 2023). "The enhancement then applies unless the defendant can show it was 'clearly improbable' that the weapon was possessed in connection with the offense." *Id.*

---

[1] The district judge said Mr. Sanchez-Cruz's identification was found in the room. This is incorrect. His identification was found elsewhere in the residence. Because officers found Mr. Sanchez-Cruz's girlfriend's ID in the room, the district judge had enough evidence to connect him to the room, and this inaccuracy, without more, is not enough to reverse the district court.

(quoting U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A)). "Constructive possession requires the government to prove a sufficient connection between the defendant and the item to support the inference that the defendant exercised dominion and control over the item." *United States v. Baldon*, 956 F.3d 1115, 1127 (9th Cir. 2020) (internal quotations omitted) (cleaned up). Thus, "[e]ven when defendants were arrested miles away from the firearms stored at their homes or places of business, we held that the defendants possessed weapons during the commission of the drug-trafficking offenses for purposes of this sentencing enhancement." *Gomez*, 6 F.4th at 1008 (citations omitted).

Mr. Sanchez-Cruz admits that he visited his children at this residence, stayed there at times, and kept personal items in the room. He contends the government failed to prove that the shotgun was connected to him or the offense since he lived elsewhere where no firearms were found, and that others used the room in Corning and stored items there.

Even if this is true, between the drugs, equipment, ID, and daughter's statement, the district judge had ample evidence connecting the bedroom to Mr. Sanchez-Cruz and this firearm to the charged offense, and the government met its initial burden. This is different than *United States v. Kelso*, 942 F.2d 680 (9th Cir. 1991). Kelso was the passenger in a car driven by a codefendant. Officers searched the car and found drugs, a pistol, and ammunition behind the driver's seat. *Id.* at

5

681. We reversed the district court's application of § 2D.1.1(b)(1) to Kelso because there was no evidence Kelso, as opposed to his co-defendant, owned the gun or "was aware of its presence." *Id.* at 682.

Instead, this case is like *United States v. Lopez-Sandoval*, 146 F.3d 712 (9th Cir. 1998), where we affirmed the application of a § 2D1.1(b)(1) enhancement when officers, following their arrest of one defendant during a drug transaction, searched his residence and found a handgun, ammunition, and ID cards between a mattress and box spring in the master bedroom. *Id.* at 714–15. Our analysis was straightforward—since the gun was found at Lopez-Sandoval's residence, he "possessed [the] weapon[] during the commission of the drug conspiracy." *Id.* at 715. Although this may not have been Mr. Sanchez-Cruz's only or primary residence, there is ample evidence that he stayed in the room where the gun and drugs were found. That documents—mostly car titles—belonging to others were found there does not alter this analysis. Instead, that the gun, nearly four pounds of marijuana, and distribution materials were found in the room with these documents indicates it may have been the nerve center of the drug operation just as much as it may show that others "used" the room. The government met its burden of proving possession, and the district court did not abuse its discretion in determining as much.

Although the enhancement should not be applied when "the defendant, arrested at [his] residence, had an unloaded hunting rifle in the closet," *Gomez*, 6

F.4th at 1008 (quoting U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A)), Mr. Sanchez-Cruz does not present any evidence that the gun was stored away in a closet or separated from the drugs and distribution equipment, or that it was "clearly improbable" he constructively possessed this gun in connection with the offense. *See Alaniz*, 69 F.4th at 1126–27; *Baldon*, 956 F.4th at 1127. Even if the gun was unloaded, that does not "make it 'clearly improbable that the weapon was connected to' the drug offense." *Gomez*, 6 F.4th at 1009 (citing *Lopez-Sandoval*, 146 F.3d at 716).

**AFFIRMED.**

FILED

OCT 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

On its road to affirm Mr. Sanchez-Cruz's sentence, the majority speeds past two critical district court errors. Because the district court erred in finding that Mr. Sanchez-Cruz constructively possessed the shotgun found in the bedroom and abused its discretion in applying the firearm enhancement, I respectfully dissent.

As a threshold matter, in order to apply the two-level firearm enhancement, district courts must first determine whether the individual possessed the firearm. "The government must prove possession by a preponderance of the evidence before the court can apply" a sentencing enhancement. *United States v. Baldon*, 956 F.3d 1115, 1127 (9th Cir. 2020) (quotation marks and citation omitted). The Ninth Circuit has outlined various ways the government may demonstrate the nexus or relationship between the defendant and the item and, just as importantly, various instances where the government *fails* to meet this burden.

In *United States v. Kelso*, the Ninth Circuit held that "proximity" of a firearm to drugs and ammunition is insufficient to establish constructive possession when there is no evidence the defendant "owned it, or even was aware of its presence[.]" 942 F.2d 680, 681–82 (9th Cir. 1991) (finding the district court clearly erred when it found defendant constructively possessed the loaded weapon found behind the seat in a car driven by defendant and in close proximity to drugs and assorted ammunition); *see also United States v. Highsmith*, 268 F.3d 1141,

1142 (9th Cir. 2001) (acknowledging that in *Kelso*, "we held that a defendant's access to a gun is necessary but insufficient to establish constructive possession").

Additionally, in *United States v. Jones*, on appeal of a conviction and sentencing on two counts of drug distribution and one count of drug conspiracy, this Court found that the "district court abused its discretion by applying" the weapon enhancement for "two guns found in [defendant's] father's garage unit." No. 22-10287, 2023 WL 7271090, at *3 (9th Cir. Nov. 3, 2023). The Ninth Circuit explained,

> [Defendant] was regularly present at his father's Los Angeles residence, where he was relegated to the garage and not permitted in the house. But that garage was also accessible to people other than [defendant] and contained others' belongings, *including his father's I.D. card*. No evidence showed that [defendant] knew the guns were in the garage or was otherwise connected to them. In particular, the guns were in a backpack, and the record does not show that the backpack was found near the packaging materials attributed to [defendant]. '[I]t is pure speculation whether [defendant] . . . ever had possession . . . of any of the firearms.'

*Id.* at *3 (quoting *United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997) (emphasis added)).

In contrast, in *United States v. Boykin*, this Court decided the district court did not "clearly err" when it found defendant possessed a weapon connected with the offense because the agents found "a sawed-off shotgun with [defendant's] fingerprints" at an address and "[t]he evidence showed [defendant] engaged in

2

numerous drug transactions at [that address]." 785 F.3d 1352, 1364 (9th Cir. 2015).

Once the court concludes that a defendant possessed the gun, "[t]he two-level sentencing adjustment is appropriate 'unless it is clearly improbable that the weapon was connected with the offense.'" *Boykin*, 785 F.3d at 1363 (quoting U.S.S.G. § 2D1.1 n. 3 (2010)); *see also* U.S.S.G. § 2D1.1 comment 11 (as an example of "clearly improbable," "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."); *see also United States v. Morales*, 680 F. App'x 548, 553 (9th Cir. 2017) (interpreting comment 11 to suggest that whether or not a firearm is useable is pertinent to the "clearly improbable" inquiry, and finding that the district court failed to consider whether the weapon was operable). Thus, the initial inquiry on possession is critical.

1. Here, the district court erred in two important ways.

First, the district court concluded that Mr. Sanchez-Cruz's "identification [i.e., wallet and Mexican passport] found in the bedroom of an ex-wife's home along with his daughter's statement" was "sufficient evidence to show, by a preponderance of the evidence, that the 20-gauge shotgun found in the bedroom in [Mr. Sanchez-Cruz's] ex-wife's home belonged to [him]." But there is no evidence that the wallet and passport were found in the bedroom, only that they were found

3

"in the residence." The majority does not dispute this was error, but confusingly, dismisses this by pointing to Mr. Sanchez-Cruz's girlfriend's identification to show *his* possession. *See* Maj. Op. at 4 n.1.

Second, the evidence before the district court was insufficient to find constructive possession. This includes (1) "two bags of cocaine, . . . a digital scale, packaging materials, . . . three bags of marijuana seeds, five bags of processed marijuana, . . . and cultivation tools[;]" (2) Mr. Sanchez-Cruz's daughter's statement that he "stayed in the northside room of the residence, which is the bedroom officers located the above items, and [Mr. Sanchez-Cruz's] girlfriend named 'Crystal' sometimes went over and stayed with [him,]"; (3) Crystal's driver's license found in the room; (4) the shirt that Mr. Sanchez-Cruz was seen wearing at the grow site a couple weeks prior to the search;[1] and (5) documents found in the bedroom "titled in the names of other individuals for vehicles [Mr. Sanchez-Cruz] and his co-conspirators drove in furtherance of a conspiracy."

---

[1] The shirt was not mentioned during the district court's hearing regarding Judgment and sentencing. Nor is the existence of the shirt documented in the PSR, despite the Government's contention in its sentencing memoranda that it was included in the PSR at paragraph 16. On December 8, 2022, the government requested that the following be added to paragraph 15 in the PSR: "agents found a striped shirt that agents had previously seen Sanchez-Cruz wearing at the grow site on July 31, 2018" but, as of December 15, 2022—the date of the final PSR—this statement was not included. The majority does not discuss this piece of evidence. Maj. Op. at 4–7.

Mere proximity to drugs and cultivation tools is not enough to support constructive possession of the firearm. *See Kelso*, 942 F.2d at 681–82.[2] In fact, in *Boykin*, this court pointed to defendant's fingerprints found on the gun *in addition* to the gun being found in a location where drug transactions had occurred as evidence of constructive possession. *Boykin*, 785 F.3d at 1364. Here, no evidence of ownership existed, such as fingerprints or ownership history. Indeed, the agents had the serial number of the shotgun, but there is no evidence they investigated it.

Further, the majority relied, in part, on Mr. Sanchez-Cruz's girlfriend's identification found in the bedroom as evidence to support a constructive possession finding. Maj. Op. at 4 n.1. But let's remember, our first inquiry is to determine Mr. Sanchez-Cruz's possession, not his girlfriend's. Another person's

---

[2] The majority's invocation of *United States v. Lopez-Sandoval*, maj. Op. at 6, puts the cart before the horse. As explained above, "[t]he government must prove possession . . . before the court can apply" a sentencing enhancement. *Baldon*, 956 F.3d at 1127. In *Lopez-Sandoval*, the defendants did not challenge the conclusion that they "possessed" the guns found. 146 F.3d 712, 714 (9th Cir. 1998). Rather, they challenged whether the guns were "connected with the offense" given that "neither of them was carrying a weapon when they were arrested." 146 F.3d at 714. In fact, defendant-Lopez-Sandoval's handgun was found in *his* residence next to "several of *his* identification cards." *Id.* at 715 (emphasis added). And defendant-Gonzalez "admitted that he constructively possessed the two handguns found in his closet." *Id.* at 714. So, while this case may shed light on what evidence is sufficient to show the requisite connection between the weapon and the offense, it does not, as the majority indicates, provide guidance on what evidence is sufficient to make the threshold finding of constructive possession.

identification found in a room goes *against* a finding that an individual constructively possessed a gun found in that room. *See Jones*, 2023 WL 7271090, at *3. And the car registrations in other people's names fails to support a constructive possession finding for the same reason. *See id.*

And, finally, the evidence that does *not* exist is just as telling. There is no evidence that Mr. Sanchez-Cruz had knowledge of the gun. *See Kelso*, 942 F.2d at 681–82; *Highsmith*, 268 F.3d at 1142. Nor is there evidence of ownership. *Kelso*, 942 F.2d at 681–82. There was no evidence before the district court illustrating where the shotgun was located in the bedroom when found, or where the shotgun was in relation to the drugs and packaging materials. Was the shotgun found in a closet? Under the bed? Locked in a trunk? Was it found on the table next to the materials or on the other side of the room in a bag? This information is relevant to constructive possession and yet, it is nonexistent here. *See Jones*, 2023 WL 7271090, at *3.

It is the government's burden to demonstrate constructive possession by a preponderance of the evidence. *Baldon*, 956 F.3d at 1127. For the foregoing reasons, I would find that this burden was not met, and the district court erred in finding possession.

2.     Even if the district court properly found that Mr. Sanchez-Cruz constructively possessed the shotgun, there is further error in its "clearly

improbable" inquiry for proper application of the enhancement. The court acknowledged, correctly, that "section 2D1.1(b)(1) requires a two-level increase if the weapon was presented unless it's clearly improbable that it was connected with the offense." On this inquiry, the court concluded that "based upon the evidence collected from the bedroom in [Mr. Sanchez-Cruz's] ex-wife's home, [he] used the bedroom from which agents seized the 20-gauge shotgun as the base of operations for the conspiracy[.]"

As explained above, there was no evidence before the court indicating where in the bedroom the shotgun was found. Nor was there evidence regarding whether the shotgun was loaded. These facts are pertinent to the court's "clearly improbable" inquiry. *See* U.S.S.G. § 2D1.1 comment 11; *see also Morales*, 680 F. App'x at 553. Comment 11 is rendered meaningless without this information.

Because the district court erred in finding constructive possession and abused its discretion in applying the firearm enhancement, I respectfully dissent.